**Collie Faye AKINS, Plaintiff-Appellant,**

v.

**SOUTH CENTRAL BELL TELEPHONE COMPANY, Defendant-Appellee.**

No. 83–4436.

United States Court of Appeals, Fifth Circuit.

Oct. 25, 1984.

Will R. Ford, New Albany, Miss., Gerber, Gerber & Agee, Memphis, Tenn., for plaintiff-appellant.

Jolly, Miller & Milam, Kenneth E. Milam, T. Hunt Cole, Jr., Jackson, Miss., for defendant-appellee.

Before BROWN, GEE and RUBIN, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

This case originated in the United States District Court for the Northern District of Mississippi as an individual action brought by Collie Faye Akins (Akins) pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq.* The District Court entered summary judgment in favor of defendant South Central Bell Telephone Company (Bell), and denied Akins' post-judgment motion to reargue and reopen the grant of summary judgment after having allowed Akins to later file affidavits with the court. We find that summary judgment was improperly granted and reverse.

Akins, a 51 year old female, was a telephone operator for Bell for 26 years in Tupelo, Mississippi until July 1980 when she was put on technological displacement leave. Suit was filed under ADEA seeking monetary damages and an injunction against Bell for age discrimination. Akins alleged that she had actively sought to return to work in an equivalent or comparable position, but that Bell had consistently denied her request for reassignment or advancement. In essence, Akins alleged that Bell failed to recall her to employment in violation of ADEA and that Bell utilized discriminatory testing practices to deny her any reemployment opportunity.

During the period September 1981 through February 1982, discovery in the case proceeded pursuant to a discovery schedule established by the court with plaintiff filing two requests for production of documents and two sets of interrogatories. Plaintiff sought production of a variety of documents, including her personnel file, written materials reflecting qualification and testing requirements for all bargaining unit jobs at the Tupelo, Mississippi facility, the written test results for plaintiff and other described employees in her unit, and the actual test forms utilized by Bell. Bell produced the materials requested with the exception of the actual test forms. On March 4, 1982, Bell filed its motion for summary judgment attaching the affidavit of Howard E. Boone, the company's Operations Staff Manager-Personnel, in Jackson, Mississippi. Akins did not respond directly to the merits of Bell's summary judgment motion but instead, six weeks later on April 22, 1982, filed with the United States Magistrate a motion to permit the reopening of discovery and with the district judge a motion to stay decision on Bell's summary judgment motion. The magistrate denied Akins' motion to reopen discovery and plaintiff appealed the magistrate's order to the district judge. On February 2, 1983, the District Court affirmed the magistrate's discovery order and denied plaintiff's motion to stay decision on the motion of summary judgment. The court further notified Akins that if she desired to submit evidence or a memorandum in response to

Bell's motion for summary judgment, such materials could be submitted within ten days. Akins did not file any affidavits in response to Bell's motion for summary judgment. While Bell's motion was awaiting disposition by the district judge, Akins moved the Magistrate to compel production of the actual employment test questions utilized by Bell—the production of which Bell had refused in October 1981. On April 4, 1983, the magistrate issued an order which compelled production "only in the event" that the district judge accepted the legal efficacy of Akins' disparate impact claim.[1] In a memorandum opinion, the District Court granted Bell's motion for summary judgment and rejected Akins' attempt to employ the disparate impact theory of Title VII in an ADEA case. As a result, Akins never obtained a copy of the test she was said to have failed. Akins, however, filed a motion to reargue the granting of summary judgment. The District Court granted the plaintiff 20 days in which to submit affidavits and a memorandum brief. Within this time period, on May 25, plaintiff submitted her own affidavit and those of three former employees in support of her post-judgment motion to reargue the granting of summary judgment.[2] On June 22, 1983, the District Court denied the plaintiff's motion. It is from the grant of summary judgment that Akins now appeals. On this appeal the question before us is whether the affidavits Akins submitted with the permission of the District Court after its grant of summary judgment raise a question of fact.

1. As the Supreme Court pointed out in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335-36 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977), discriminatory or disparate treatment occurs where "[t]he employer simply treats some people less favorably than others because of their race, color, religion, sex or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment. "Disparate impact," on the other hand, results from the use of "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." (Citation omitted). Proof of discriminatory motive is not required to sustain a claim of disparate impact. *Geller v. Markham*, 635 F.2d 1027, 1031 (2d Cir.1980), *cert. denied*, 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981).

2. As paraphrased, these affidavits alleged:

*Collie Fay Akins*
In June 1980 worked as assignment clerk in Tupelo office; the job required no typing; all typing was done by the Plant Supervisor Clerk. Was qualified for consideration for transfer or promotion to this job without taking any tests. Supervisor had wanted her to stay on job as temporary assignment clerk, but was reassigned as operator by management. Assignment clerks did not have any typewriters at their duty stations and the job did not require math skills or the use of any adding machines or calculators or any other equipment. Also, knew of vacancies in jobs that did not require testing in the Tupelo office which became available and was not notified of these openings in violation of the employees collective bargaining agreement with Bell. Also knew that individuals who made a "D" on a Bell test were given jobs in the Tupelo office over people who made a "C" on the test with less seniority.

*Audrey J. Perryman*
Seniority was major consideration in judging qualifications of employees for job requiring no test for employment. Knew of vacancies in jobs that did not require testing which became available since June 1980 at the Tupelo office. Out of the 75 people over the age of 40 that were at the Tupelo office in 1980, approximately 10 remain in the employment of Bell. Knew that Bell has hired 10 women off the street as new employees, all who were under 40. The job of assignment clerk requires no typing or any use of any adding machines or calculators. Bell has used testing to discriminate against people on the basis of age.

*Moieze L. Nanny*
The job of assignment clerk does not require typing. All typing was done by the plant supervisor clerk. Only 10 of the 75 operators over 40 years old formerly working in Tupelo are still employed by Bell. Bell has used testing to discriminate against people on the basis of age. Knew that job vacancies at Bell were not offered to Akins in violation of the collective bargaining agreement.

*Charlene Berryhill*
Bell's tests bear no relationship to the job and are couched heavily in favor of those individuals who have recently completed their secondary education. Bell used the tests as discriminatory weapons against not only Collie Faye Akins, but many others in the protected age bracket.

██ After considering Akins' affidavits which were properly before the District Court we are of the opinion that summary judgment was improperly granted. There are a host of disputed material facts raised in the affidavits filed by both parties. Such disputes render summary judgment inappropriate because the party moving for summary judgment must demonstrate that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.[3] Accordingly, we remand to the District Court for further action.

██ Upon remand it seems clear to us that the content of the Bell test taken by Akins—which allegedly led to her denial of the position of assignment clerk—is an instrumental part of her case. Bell's objection that the content of the test is confidential contains little merit. Confidential information is produced in lawsuits all the time. Should the District Court deem it necessary, a protective order may be used to safeguard the confidentiality of the Bell examination. While we again do not determine whether the disparate impact theory, as raised by Akins, is available in ADEA cases, it does seem appropriate for us to say that the District Court should determine whether the test taken by Akins was job related; the Court should also explicitly consider the disparate impact theory so that, on any appeal, we can authoritatively determine the issue.[4] However, regardless of the theory under which Akins proceeds, it seems necessary for her to obtain a copy of her test.

REVERSED and REMANDED.

**3.** While "[s]ummary judgment is an excellent device by which district courts may make expeditious disposition of those cases in which a trial would be fruitless," *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir.1980), the trial court may grant it "only when the moving party has established his right to judgment with such clarity that the nonmoving party cannot recover ... under any discernable circumstance." *Everhart v. Drake Management, Inc.*, 627 F.2d 686, 690 (5th Cir.1980). "The district court, when deciding whether to grant a motion for summary judgment, must view the evidence in the light most favorable to the party resisting the motion." *Jones v. Western Geophysical Co. of America*, 669 F.2d 280, 283 (5th Cir.1982). "The fact that it appears that the nonmover is unlike-

ly to prevail at trial or that the mover's facts appear more plausible are not reasons to grant summary judgment." *Id.* at 283.

**4.** We point out to the District Court that the following cases have considered the disparate impact theory in ADEA cases: *E.E.O.C. v. Borden's Inc.*, 724 F.2d 1390 (9th Cir.1984); *Air Line Pilots Ass'n. Intern. v. Trans World Airlines, Inc.*, 713 F.2d 940 (2d Cir.1983); *Massarsky v. General Motors Corp.*, 706 F.2d 111 (3d Cir.1983); *Leftwich v. Harris-Stowe State College*, 702 F.2d 686 (8th Cir.1983); *United Independent Flight Officers, Inc. v. United Air Lines, Inc.*, 572 F.Supp. 1494 (D.C.Ill.1983).